IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00775-PAB-STV

PSO-RITE.COM LLC, a Delaware limited liability company,

      Plaintiff,

v.

THRIVAL LLC, a Colorado limited liability company,
CAMERON SMITH, an individual,
DOMINIC RAINVILLE, an individual, and
WILLIAM SMITH, an individual,

      Defendants.

---

## ORDER

---

This matter is before the Court on Defendants' Motion to Dismiss Under F.R.C.P. 12(b)(6) and 12(c) [Docket No. 75], wherein defendants seek to dismiss plaintiff's design patent infringement counterclaim and to dismiss all claims against the individual defendants. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## I. BACKGROUND

Plaintiff Pso-Rite.com LLC ("Pso-Rite") is a seller of muscle recovery tools. Docket No. 1 at 5, ¶ 16. Pso-Rite obtained ownership of Patent No. D823,479 (the "'479 Patent") on July 17, 2018. *Id.* at 4–5, ¶¶ 13–14. The '479 Patent is an "ornamental design for a massager." Docket No. 1-1 at 2. The '479 Patent covers a design for a massager, *id.*, which is a single manufactured item characterized by two

pommel shapes[1] joined by a corresponding saddle.  *Id.* at 4, 6.  Some of the figures from this patent are reproduced below.



FIG.1                    FIG.3

*Id.*

In 2020, defendants Cameron Smith, Dominic Rainville, and William Smith formed defendant Pso Much Better LLC.  Docket No. 1 at 10, ¶ 38.  On Pso Much Better LLC's website, defendants sold the Pso Much Better Release Board with Pso Much Better Bullseye and Meat Grinder attachments, which Pso-Rite alleges infringes the '479 patent.  *Id.* at 10–11, ¶ 40.  As shown below, the release board consists of a flat surface with slots located at regular intervals, into which attachments, such as the

---

[1] The plaintiff has described the protrusions at either end of the design as "pommels."  *See* Docket No. 83 at 1.  The Court finds this to be an apt description and adopts this terminology without attempting to construe the patent.

Bullseye and Meat Grinder attachments, can be slotted to create a "personal massage device."  *Id.*



*Id.*

Pso-Rite sent Pso Much Better LLC a letter on December 29, 2020 requesting that it cease and desist from infringing on plaintiff's trademarks and patents.  *Id.* at 13, ¶ 44.  In January 2021, the individual defendants changed the name of Pso Much Better LLC to Thrival LLC, but denied that any of their actions constituted patent infringement. *Id.*, ¶¶ 44–45.  In response to Pso-Rite's letter, Thrival stated that it would sell its stock of products that were labelled "Pso Much Better."  *Id.* at 14, ¶ 48.  Thrival continues to sell products that plaintiff asserts infringe on the '479 Patent, now under the names of the "Bullseye" and the "Meat Grinder," without reference to Pso Much Better.  *Id.* at 13, ¶ 46.

On March 16, 2021, Pso-Rite filed this action asserting claims against defendants for (i) design patent infringement, (ii) trademark infringement, (iii) unfair competition, (iv) false designation of origin, (v) cybersquatting, and (vi) unfair competition.  *Id.* at 32–43, ¶¶ 72–128.  On May 14, 2021, defendants filed a motion to

dismiss the design patent infringement claim as well as all claims against the individual defendants.  Docket No. 20.  The Court granted in part defendants' motion to dismiss the design patent infringement claims, finding that Pso-Rite failed to state a plausible claim for infringement of the '479 Patent against the defendants.  Docket No. 50 at 11. The Court denied defendants' request to dismiss the claims against the individual defendants for mootness.  *Id.*

On July 6, 2021, while defendants' motion to dismiss was pending, Pso-Rite informed defendants that the United States Patent and Trademark Office had issued a notice of allowance for a new patent, Design Patent No. D928,336 (the "'336 Patent"). Docket No. 55 at 29, ¶ 36.  Pso-Rite describes the design as "a generally U-shaped single pommel rising from a rectangular base."  Docket No. 83 at 1.  A figure from the '336 Patent is reproduced below.



FIG.1

Docket No. 60-1 at 4.

4

On October 28, 2022, defendants filed their answer to Pso-Rite's complaint. Docket No. 55.  In addition to their answer, defendants filed nine counterclaims, two of which seek declaratory judgments of invalidity and non-infringement as to the '336 Patent.  Docket No. 55 at 39–45, ¶¶ 74–93.  On December 19, 2022, Pso-Rite filed its Answer, Defenses, and Counterclaims to defendants' answer.  Docket No. 60.  Pso-Rite asserts a counterclaim against Thrival for patent infringement based on the '336 Patent. *Id*. at 19–24, ¶¶ 12–25.  On January 23, 2023, defendants filed a motion to dismiss the new patent infringement claim and renewed their request for the individual defendants to be dismissed.  Docket No. 75.

## II.  LEGAL STANDARD

"The Federal Circuit applies Federal Circuit law 'to substantive and procedural issues unique to and intimately involved in federal patent law,' and applies 'regional circuit law to other substantive and procedural issues.'"  *Christy, Inc. v. United States*, 141 Fed. Cl. 641, 666 (2019), *aff'd*, 971 F.3d 1332 (Fed. Cir. 2020) (quoting *Verinata Health, Inc. v. Ariosa Diagnostics*, Inc., 830 F.3d 1335, 1338 (Fed. Cir. 2017)).  The decision to grant a motion to dismiss "is a purely procedural question not pertaining to patent law" that the Federal Circuit reviews under regional circuit law.  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the

facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with her allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).  Otherwise, a court need not accept conclusory allegations.  *Moffet v. Halliburton Energy Servs.*, *Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

6

## III.  ANALYSIS

### A.  Design Patent Infringement

Plaintiff's patent infringement claim arises under 35 U.S.C. § 271, which states, "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent."  35 U.S.C. § 271(a).  Plaintiff must "(i) allege ownership of the patent; (ii) name each defendant; (iii) cite the patent that is allegedly infringed; (iv) describe the means by which the defendant allegedly infringes; and (v) point to the sections of the patent law invoked."  *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013).

The test for infringement of a design patent is the ordinary observer test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc). Under that test, "infringement will not be found unless the accused article embodies the patented design or any colorable imitation thereof."  *Id.* (quotations, citation, and alteration omitted).  The question is whether "an ordinary observer, familiar with the prior art designs, would be deceived into believing the accused products are the same as the patented design."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1306 (Fed. Cir. 2010); *see also Hall*, 705 F.3d at 1363.  On a motion to dismiss, dismissal is appropriate if "no reasonable jury could find that the designs of the[ ] two [articles] are substantially similar."  *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006).

When a court applies the ordinary observer test, "[a] proper comparison requires a side-by-side view of the drawings of the [ ] patent design and the accused products." *Crocs, Inc.*, 598 F.3d at 1304.  In comparing the patent design to the accused product,

each must be analyzed "as a whole." *Id.* at 1302. "[A] design may contain both functional and ornamental elements, even though the scope of a design patent claim 'must be limited to the ornamental aspects of the design.'" *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (citing *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015); *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010)). A court should not "entirely eliminate a structural element from the claimed ornamental design, even though that element also serve[s] a functional purpose." *Sport Dimension*, 820 F.3d at 1321. Instead, a court must compare the non-functional aspects of the ornamental design of the infringing product "as seen as a whole" and the ornamental design "as shown in the patent." *Amini Innovation Corp.*, 439 F.3d at 1371.

Pso-Rite asserts that it is the owner of the '336 Patent. Docket No. 60 at 20, ¶ 14; Docket No. 60-1. Pso-Rite names each defendant in its answer and counterclaims. Docket No. 60 at 17, ¶¶ 3. Pso-Rite claims that defendants infringed on the '336 Patent by making, using, offering to sell, and selling Thrival's Bullseye product (the "accused product").[2] Docket No. 60 at 24, ¶¶ 22–23. Pso-Rite claims that

---

[2] Pso-Rite is not entirely clear as to what product allegedly infringes the '336 Patent. Pso-Rite refers to the "Bullseye product." Docket No. 60 at 24, ¶¶ 22–23. Defendants characterize the allegedly infringing product as the "Bullseye attachments." Docket No. 75 at 9. They assert that the Bullseye attachments are not standalone, but are "components incorporated into, and used in conjunction with, release boards." *Id.* The Bullseye attachments are not sold separately. *Id.* Elsewhere, defendants discuss "Thrival's products," presumably discussing collectively the individual "products" of the Bullseye attachment, the other attachments, and the release boards. *See, e.g., id.* at 10. Section 171 of Title 35 authorizes the issuance of design patents for "an article of manufacture." *Egyptian Goddess* discusses the ordinary observer test in terms of whether "the accused article embodies the patented design or any colorable imitation thereof." *Egyptian Goddess*, 543 F.3d at 678. The Supreme Court has held that "the

defendants' infringement of the '336 Patent violates 35 U.S.C. § 271(a) for direct infringement and 35 U.S.C. § 271(b) for induced infringement. *Id.* at 23, ¶¶ 18–19. Pso-Rite asserts that Thrival's infringement was willful, entitling it to enhanced damages and reasonable attorney's fees under 35 U.S.C. §§ 284 and 285. *Id.* at 24, ¶ 25.

Defendants argue that, under the ordinary observer test, Pso-Rite fails to make out a plausible claim of infringement. Docket No. 75 at 7. Thrival relies on documents outside the pleadings in moving to dismiss Pso-Rite's claims. *See* Docket No. 75 at 8–13. Generally, if a court considers matters outside the pleadings in deciding a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Pso-Rite contends that the documents and photographs defendants rely on in their motion to dismiss are neither referenced in Pso-Rite's complaint or counterclaim, nor are central to Pso-Rite's claims. Docket No. 83 at 10–11. The Court agrees that it would be improper to rely on

---

term 'article of manufacture' is broad enough to embrace both a product sold to a consumer and a component of that product, whether sold separately or not." *Samsung Elecs. Co. v. Apple Inc.*, 580 U.S. 53, 62 (2016); *see also Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1324 (Fed. Cir. 2019). For purposes of this motion, the Court considers the allegedly infringing product to be the articles of manufacture that are the Bullseye attachments, and not the product sold to consumers, which is comprised of the Thrival release board bundled with a pair of attachments, such as two Bullseye attachments or two Meat Grinder attachments. *Compare* Docket No. 1 at 11, ¶ 40, *supra* at 3 (images of defendants' products as sold to consumers) *with* Docket No. 60 at 21–23, *infra* at 10–11 (images of the Bullseye attachment).

photographs outside Pso-Rite's complaint and counterclaim and therefore limits its review to the images included by Pso-Rite in its counter claim.  *See* Docket No. 60 at 21–23.  The labels on these images were added by Pso-Rite.  *Id.*





*Id.*

  In the Court's previous order, the ordinary observer was identified as a person interested in purchasing a massager for his or her personal use.  Docket No. 50 at 9.  Neither Pso-Rite nor Thrival has contended that this is an inappropriate standard; however, Pso-Rite suggests that the ordinary observer may alternately be a distributor or purchase manager interested in wholesale distribution of these products.  Docket No. 83 at 6.  For purposes of this order, the Court finds no difference between the two hypothetical observers in their ability to be deceived into buying one product while intending to buy the other.

  The next question is whether "in the eyes of an ordinary observer . . . two designs are substantially the same" whereby "the resemblance is such as to deceive [the] observer, inducing him to purchase one supposing it to be the other."  *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871).  Defendants point to several dissimilarities

they believe prove that an ordinary observer would not confuse the two products.[3]  First, defendants contend that the two small "arrow-notches" on the base of the Bullseye product distinguish it from the base of the '336 Patent, which has no protrusion of any type.  Docket No. 75 at 10.  Second, defendants state that, while the sides of the Pso-Rite pommel "constantly taper," the sides of the Bullseye pommel run "parallel" for a "significant portion of the attachment."  *Id.* at 11.  Defendants further state that the lines of the Bullseye attachment contour in a concave manner towards the base of the product, while the Pso-Rite pommel slopes in a linear fashion towards the base.  *Id.* at 12.

Defendants' final asserted dissimilarity concerns the base of the product.  First, defendants suggest that the Bullseye pommel is only a component of a larger system, and therefore the Court should consider the Thrival Release Board and the Thrival Travel Release Board as the base for purposes of applying the ordinary observer test.  Docket No. 75 at 9.  This identification of the base would, presumably, change the appearance of the product such that the ordinary observer could readily distinguish the two products.  Pso-Rite responds that the Court should not consider the Thrival Release

---

[3] The Court notes that neither party addressed in more than a perfunctory manner how the Court's analysis should be impacted by prior art.  Defendants' only reference to prior art is to assert that, because "the accused product is sufficiently distinct from the patented design in a side-by-side comparison, reference to the prior art is not necessary."  Docket No. 75 at 6 (citing *Egyptian Goddess*, 543 F.3d at 678).  Plaintiff's only reference to prior art is that the protrusions on the Bullseye attachment "raise questions of fact as to their significance vis-à-vis prior art."  Docket No. 83 at 2.  The complaint includes four images of products that are highly dissimilar to either the Bullseye attachment or the '336 Patent, although Pso-Rite makes no reference to these images in its briefing.  Docket No. 1 at 28–29.  The parties have not presented to the Court sufficient argument and evidence to suggest that the prior art alters the Court's analysis under the ordinary observer test.

Board and the Thrival Travel Release Board, which are separate parts, but should instead focus on the accused "product" itself, which is the Bullseye pommel.  Docket No. 83 at 8 (citing *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 (Fed. Cir. 2014) (unpublished)).

As stated earlier, the Court has determined that the Bullseye attachment is the proper article to compare with the '336 Patent.  In *Contessa Food Prod., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1381 (Fed. Cir. 2002), the court found that the district court erred by not considering the figure illustrating the underside of the design patent and the corresponding underside of an allegedly infringing shrimp display tray.  The court reasoned that a consumer would have to remove the tray's packaging before consuming the shrimp, exposing the underside of the tray and making the underside an ornamental feature visible during normal use of the product.  *Id.*  The Court finds the proper base to consider here is the base of the '336 Patent and the base of the Bullseye pommel itself.  As part of the normal use of the Bullseye pommel, a consumer would have to fit the pommel into the desired location in the Thrival Release Board.  In taking

this action, the consumer would view the base of the pommel.  A side-by-side comparison of these bases is reproduced below.



| The D'336 Patent | Defendants' Infringing Bullseye Product |
|---|---|

Defendants argue that the "cross shaped protrusion" on the base of the Bullseye attachment distinguishes it from the completely flat bottom surface of the '336 Patent. Docket No 75 at 10.  Pso-Rite responds that the cross-shaped protrusion is "functional and not dominant"[4] and therefore should not factor into the Court's analysis.  Docket No. 83 at 2.  The Court disagrees.  The cross-shaped protrusion at the base of the Bullseye pommel has the function of helping attach the pommel to the Thrival release board.  However, this does not mean that the Court should ignore the cross entirely.

The Court finds the Federal Circuit's explanation of the relevant case law in *Sport Dimension, Inc.* to be instructive.  *Sport Dimension, Inc.*, 820 F.3d at 1320–21.  There, the Federal Circuit reviewed three cases in which the court affirmed district courts that had excluded from their analysis functional aspects of a product, but had properly

---

[4] The Court is unaware of authority supporting the proposition that an element may be disregarded in a comparison between the design patent and the allegedly infringing product "as seen as a whole" because the element is "not dominant."

considered all of the product's ornamental aspects.  *Id.* (discussing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997), *Ethicon Endo–Surgery*, 796 F.3d at 1333, and *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010)).  In particular, the Federal Circuit's discussion of the *Richardson* case is applicable here.  The court explained that the *Richardson* "case concerned a multi-function tool described in the patent as comprising several elements that are driven purely by utility, including a hammer, crowbar, and stud climbing tool."  *Id.* (citing *Richardson*, 597 F.3d at 1294).  "Those elements – i.e., the hammer's flat head, the crowbar's elongated shape, and the stud climbing tool's jawlike shape – were well known in the art, and their basic design was dictated by their respective functional purposes.  But there were nevertheless ornamental aspects of the design of those elements."  *Id.* (citations omitted). As such, the design patent protected "the ornamental aspects of Richardson's design, which include, among other things, the standard shape of the hammer-head, the diamond-shaped flare of the crow-bar and the top of the jaw, the rounded neck, the orientation of the crowbar relative to the head of the tool, and the plain, undecorated handle."  *Id.* (citation and quotation omitted).

Here, the cross-like protrusion is similar to the tool elements of the multi-tool. The protrusion serves a particular purpose, namely, helping to secure and stabilize the Bullseye pommel in a particular location on the Thrival release board while it is being used as a personal massager.  However, the protrusion also has some decorative elements.  For example, the function of the protrusion could have been accomplished by a variety of shapes, but the defendants chose a cross with certain non-standard dimensions, for example, the elongation of the horizontal bisecting bar.  Because the

ordinary observer takes into account the whole design of a product and because the cross-like protrusion has decorative elements, the Court finds that the cross-like protrusion cannot be excluded from the comparison.

The appropriate question is whether the differences pointed out by the defendants (the arrow notches, the non-tapering sides, the concave contouring of the pommel to the base, and the cross-like protrusion at the base of the Bullseye), taken as a whole, so impacts the ornamental design of the whole product – its overall lines, shapes, aesthetic, and visual themes – that an ordinary observer "would be deceived into believing the accused products are the same as the patented design." *Id.* at 1306. The Court finds that no reasonable jury could find that the designs of the two pommels are substantially similar.

The overall silhouette and visual impressions of the Bullseye pommel are distinct from the '336 Patent.  The cross-like protrusion occupies nearly half of the base of the Bullseye attachment – one of the six primary planes of view for an object.  The cross-like protrusion itself is distinctive; nowhere in the '336 Patent is there a feature that breaks the otherwise smooth surface of the design.  Furthermore, the cross, created by two lines at right angles to each other, is a marked departure from the visual themes found elsewhere in both the Bullseye and '336 Patent, which are composed of rounded curves without sharp angles.  The cross consists of the bisection of a long line by a significantly shorter line, which departs from the symmetrical and equilateral design of the '336 Patent.  Finally, although the photographs in Pso-Rite's counterclaim do not include this view, it is obvious from the base pictures alone that the cross-like protrusion will visually impact every side view of the Bullseye product.  Seen from the side, this

16

protrusion would depart from the other visual themes in either the design or defendants'
product, given its sharp angles and by virtue of its mere existence.  In short, the cross-
like protrusion has a dramatic effect on the base of the Bullseye pommel, as well as a
lesser effect on each side view of the product and its overall silhouette.  In addition, the
Bullseye's arrow notches, the parallel sides of its pommel, and the pommel's concave
tapering all further contribute to the Bullseye's distinct silhouette and visual impression.
As such, an ordinary observer would find the overall design of the product is distinct
from the '336 Patent and a reasonable jury could not find an ordinary observer would be
deceived into buying the Bullseye when intending to buy a Pso-Rite product based on
the '336 Patent.

Pso-Rite also contends that defendants have infringed the '336 Patent under the
doctrine of equivalents.  Docket No. 83 at 9–10.  Prior to *Egyptian Goddess*, the Federal
Circuit found that the doctrine of equivalents applies to design patent claims.  *Sun Hill
Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1199 (Fed. Cir. 1995) (abrogated on
other grounds by *Egyptian Goddess*, 543 F.3d 665).  However, "[t]he substantial
similarity test by its nature subsumes a doctrine of equivalents analysis."  *Minka
Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 F. App'x 214, 217 (Fed. Cir. 2004)
(unpublished); *see also Degelman Indus., Ltd. v. Pro-Tech Welding & Fabrication, Inc.*,
2011 WL 6754040, at *15 (W.D.N.Y. May 27, 2011), *report and recommendation
adopted*, 2011 WL 6752565 (W.D.N.Y. Dec. 23, 2011) ("the applicability of the doctrine
of equivalents to design patent infringement has been questioned.").  *Egyptian Goddess*
did not articulate a separate analytical framework for direct infringement claims and for
those under the doctrine of equivalents.  *See Egyptian Goddess*, 543 F.3d 665.  The

17

Court finds that, for the same reasons that the Bullseye product cannot be found to directly infringe the '336 Patent, infringement cannot be found under the doctrine of equivalents.

The Court finds that Pso-Rite has failed to state a plausible claim of infringement of the '336 Patent against Thrival and therefore grants that aspect of defendants' motion to dismiss Pso-Rite's patent infringement claims.

### B.  Individual Defendants

In addition to Thrival LLC, each of Pso-Rite's claims is also brought against individual defendants Dominic Rainville, Cameron Smith, and William Smith.  *See* Docket No. 1 at 32–43; Docket No. 60 at 19–24.  Defendants previously argued that the individual defendants should be dismissed since plaintiff does not allege sufficient facts to support piercing the corporate veil under Colorado law.  Docket No. 20 at 13.  In the Court's order granting defendants' earlier motion to dismiss, the Court declined to rule on defendants' individual liability for patent infringement because the issue was mooted by the dismissal of the claim.  See Docket No. 50 at 11.  Given that the Court will dismiss Pso-Rite's first counterclaim for infringement of the '336 Patent, the Court declines to rule on the individual defendants' liability for infringement regarding that claim on the same mootness grounds.

Although Pso-Rite's response to defendants' motion to dismiss focuses exclusively on the issue of individual liability for patent infringement, Docket No. 83 at 10, defendants have requested dismissal of all of Pso-Rite's claims against the individual defendants.  Docket No. 75 at 13–14.  These claims include violations of the Lanham Act, claims two through five, and violations of Colorado common law, claim six.

18

Docket No. 1 at 35–43, ¶¶ 85–128.  Defendants contend that Pso-Rite has failed to allege sufficient facts in its claims for relief to justify piercing the corporate veil of Thrival. Docket No. 75 at 13–14.  Defendants note that Pso-Rite incorporates the individual defendants only "in their capacity as owners and principals of Thrival."  *Id.* at 13; Docket No. 80 at 10.

However, it is not true that individual defendants can be found liable for patent and trademark infringement only through piercing the corporate veil.  The Tenth Circuit has found that individual liability can arise under two theories of secondary liability under the Lanham Act.  *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1240 (10th Cir. 2013).  First, "the Lanham Act incorporates common-law agency principles: a principal may be held vicariously liable for the infringing acts of an agent."  *Id.*  Second, liability can attach through contributory infringement, which "consists of either intentionally causing or knowingly facilitating the infringement of the plaintiff's mark by a third party."  *Id.* (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 853–54 (1982)).

Other courts in this district have found that, "[i]n a trademark infringement case, the Court does not undertake the traditional veil piercing analysis."  *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1314 (D. Colo. 2012).  "Rather, a claim for trademark infringement may be asserted against a stockholder or officer of a corporation who is responsible for his corporation's infringing activities."  *Id.* (citing *Feder v. Videotrip Corp.*, 697 F. Supp. 1165, 1177 (D. Colo. 1988)).  These courts have found that individual liability may be imposed on a corporate officer who had no knowledge of the infringement, but who had: (1) the right and ability to supervise the

19

infringing activity; and (2) a direct financial interest in such activity.  *Id.*  In *List Interactive, Ltd. v. Knights of Columbus*, 303 F. Supp. 3d 1065, 1078 (D. Colo. 2018), the court found that, "[a]t a minimum, personal liability attaches to a defendant who was directly involved in the conduct through conception or authorization."  *Id.* at 1078 (emphasis and citation omitted).  In the part of the court's order addressing the defendants' motion to dismiss counterclaims, the court declined to dismiss the trademark infringement claims against the individual defendants.  *Id.* at 1079.  The court found it sufficient for the plaintiff to have alleged that the infringing company was "directed by four individuals" who had made "directorial decisions" in creating the infringing webpage and authorizing the wrongful trademark conduct.  *Id.*  This holding is consistent with recent cases from the Federal Circuit, which have held individuals liable for direct patent infringement even if their tortious acts were committed as corporate officers.  *See Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358–59 (Fed. Cir. 2021); *Global Traffic Technologies LLC v. Morgan*, 620 F. App'x 895, 907, 908 n.6 (Fed. Cir. 2015) (unpublished).

Pso-Rite has not alleged specific facts in each claim that indicate the individual defendant's role in Thrival's alleged misconduct.  However, on a motion to dismiss, the Court accepts as true certain claims contained in Pso-Rite's complaint.  First, Thrival was formed as Pso Much Better LLC by defendants Dominic Rainville, Cameron Smith, and William Smith.  Docket No. 1 at 10, ¶ 38.  Defendants Rainville and Smith posted a video on social media in which they stated, "we created this product and started Pso Much Better."  *See Id.* at 16–17, ¶ 54.  Defendant Smith has represented to the United States Patent and Trademark Office that he is a "managing partner" of Pso Much Better

LLC.  *Id.* at 32, ¶ 71.  On December 29, 2020, Pso-Rite sent defendants a cease-and-desist letter, addressed to Cameron Smith, discussing Pso-Rite's patent and trademark infringement concerns.  Docket No. 1-3 at 2.  Defendants acknowledged receipt of Pso-Rite's cease and desist letter in their January 11, 2021 letter, *id.* at 13, ¶ 44, but indicated that they would continue to sell their initial batch of products marked "Pso Much Better."  *Id.* at 37.  Taking these allegations as true, the Court finds that Pso-Rite has pled sufficient facts to show that the individual defendants participated in the conception and authorization of Thrival's allegedly infringing conduct.  The Court therefore denies the defendants' motion to dismiss Pso-Rite's second, third, fourth, and fifth claims under the Lanham Act against the individual defendants.

Consistent with federal trademark case law, Colorado law supports the proposition that, "while an officer of a corporation cannot be held personally liable for a corporation's tort solely by reason of his or her official capacity, an officer may be held personally liable for his or her individual acts . . . even though committed on behalf of a corporation."  *Holloway v. Briller, Inc.*, No. 15-cv-01337-RBJ, 2016 WL 915752, at *7 (D. Colo. Mar. 10, 2016) (citing *Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. App. 2003)).  As such, Pso-Rite need not allege facts sufficient to pierce the corporate veil to assert a valid claim against the individual defendants for unfair competition under Colorado common law.  Defendants make no other arguments against the sufficiency of Pso-Rite's state law claims.  Therefore, the Court denies in part defendants' motion to dismiss Pso-Rite's sixth claim for relief for unfair competition.  Docket No. 1 at 42.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Dismiss Under F.R.C.P. 12(b)(6) and

12(c) [Docket No. 75] is **GRANTED in part and DENIED in part**.  It is further

**ORDERED** that plaintiff's first counterclaim for patent infringement [Docket No.

60 at 19] is **DISMISSED** without prejudice.


DATED January 10, 2024

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge